UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE BLAY,

     Plaintiff,                       Civil Action No. 16-13435
                                     Honorable Denise Page Hood
                                     Magistrate Judge Elizabeth A. Stafford

     v.

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

     Defendant.
_____/

**REPORT AND RECOMMENDATION ON CROSS
MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 14,16]**

Plaintiff George Blay appeals a final decision of Defendant

Commissioner of Social Security denying his application for disability

insurance benefits (DIB) and supplemental security income benefits (SSI)

under the Social Security Act.  The parties filed cross motions for summary

judgment, [ECF Nos. 14 and 16], which were referred to this Court for a

report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the

reasons stated below, the Court **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 16] be **GRANTED**;

- Blay's motion [ECF No.14] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence

four of 42 U.S.C. § 405(g).

## I.  BACKGROUND

### A.  Blay's Background and Claimed Disabilities

Born April 13, 1956, Blay was 58 years old when he submitted his applications for disability benefits on April 17, 2014.  [ECF No. 11-3, Tr. 75]. He has a high school education, and past relevant work as a buyer and human resources representative.  [ECF No. 11-2, Tr. 38; ECF No. 7-6, Tr. 85].  Blay alleged that he is disabled due to depression, AIDS, diabetes, short breath, fatigue and heart issue, with an onset date of February 8, 2013.  [ECF No. 11-3, Tr. 75].  His date last insured is December 31, 2018. [*Id.*].

After a hearing on February 3, 2016, during which Blay and a vocational expert ("VE") testified, the ALJ found that Blay was not disabled. [ECF No. 7-2, Tr. 15-32, 33-72].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 1-6].  Blay timely filed for judicial review.  [ECF No. 1].

### B.  The ALJ's Application of the Disability Framework Analysis

DIB and SSI are available for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the "inability to engage in any substantial gainful activity by reason of any

2

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1] Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c); § 920(c).

claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Blay was not disabled. At step one, he found that Blay had not engaged in substantial gainful activity since his alleged onset date. [ECF No. 11-2, Tr. 20]. At step two, he found that Blay had the severe impairments of "human immunodeficiency (HIV), diabetes mellitus, and hypertension." [*Id.*]. The ALJ concluded at step three that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 22-23].

Between the third and fourth steps, the ALJ found that Blay had the RFC to perform sedentary work with the following limitations:

> [T]he claimant must avoid exposure to hazards including work at unprotected heights and around moving machinery. He cannot climb ladders, ropes or scaffolds. He can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant cannot drive in the course of his employment, or operate foot controls. He cannot be exposed to temperature extremes.

[ECF No. 11-2, Tr. 23]. At step four, the ALJ found that Blay could perform past relevant work as a human resources employee, and thus he was not disabled. [*Id.*, Tr. 27].

4

## II.    ANALYSIS

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Blay argues that the ALJ failed to properly identify and account for all of his severe impairments; improperly rejected mental impairments evidence at step two, including opinion evidence; erred in assessing his credibility; and that the RFC is not supported by substantial evidence. These arguments are without merit, and the ALJ's decision should be affirmed.

**A.**

A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c); § 920(c). By "basic work activities," the Commissioner means "the abilities and aptitudes necessary to do most jobs," including:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 1522(b); 20 C.F.R. § 922(b). Blay bears the burden of demonstrating that he suffers from severe impairments. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (claimant bears burden during first four steps).

Blay argues that the ALJ erred in failing to list the following as serve impairments:

> several cardiac blood conditions – coronary artery disease, carotid artery disease, peripheral vascular disease, atherosclerotic heart disease, ischemic cardiomyopathy, hyponatremia, and hyperlipidemia; chronic kidney disease/renal failure syndrome; obesity; peripheral neuropathy; back condition; myalgias/myositis; and mental conditions including major depressive disorder, cognitive disorder, generalized anxiety disorder, and personality disorder.

6

[ECF No. 14, PageID 713-14].  Blay cites to the record showing that he was diagnosed with these conditions, [*id.*, PageID 714; citing ECF No. 11-7, Tr. 319, 326, 349, 363, 380; ECF No. 11-8, Tr. 418-419, 424, 452, 457, 481; ECF No. 11-9, Tr. 537, 588-89], but he does not provide evidence that they result in specific limitations.  His diagnoses say nothing about their severity or impact on his ability to perform basic work activities. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *Kennedy v. Astrue*, 247 Fed. Appx. 761, 767 (6th Cir. 2007).

Furthermore, while the ALJ did not find all of Blay's diagnoses to be severe at step two, his decision makes clear that he did consider the conditions and the symptoms they allegedly caused in the remainder of his analysis.  The ALJ acknowledged that Blay was diagnosed with coronary artery disease, but noted that treatment notes were "handwritten and difficult to read. . . .  [T]hey are very brief, and do not appear to indicate any significant symptoms."  [ECF No. 11-2, Tr. 24, citing ECF No. 11-9, Tr. 628-650].  And the ALJ pointed out that despite Blay's diagnosis of hypertension and varying blood pressure, the "claimant's cardiologist noted a history of coronary artery disease, but no cardiac abnormalities were note[d] during the alleged period."  [ECF No. 11-2, Tr. 24].  The record supports the ALJ's findings about Blay's cardiac condition.  [ECF No. 11-7,

Tr. 283, 279, 319, 325, 343, 351, 360-364, 354, 356; ECF No. 11-8, Tr. 452, 515, 618-19; ECF No. 11-9, Tr. 564, 568, 572, 576, 582, 586].

After falling back and hitting a dresser, Blay suffered pain in his mid-back, and began physical therapy in December 2014. [ECF No. 11-8, Tr. 505]. He stopped physical therapy in January because he was out of town, but continued again until February 2015. [*Id.*, Tr. 483]. The ALJ noted that after being discharged from physical therapy for his back pain, the medical record states that "he did well with therapy" and although still had pain, was able to manage his symptoms. [ECF No. 11-2, Tr. 25, citing ECF No. 11-8, Tr. 484, 481-512].

Blay further argues that he was diagnosed with obesity, and that even if the ALJ did not think there was enough evidence in the record to support the diagnosis, he was required to contact the medical source for further classification. [ECF No. 14, Tr. 714, citing, 20 C.F.R. §§ 404.1512(e), 416.912(e).] The Court disagrees. As Blay states himself, there is "an abundance of objective medical evidence" in the record spanning the disability period. [ECF No. 14, PageID 714]. Thus, the ALJ was under no duty to re-contact the medical source. *Jones v. Comm'r of Soc. Sec.*, No. CIV.A. 11-14430, 2012 WL 6757248, at *8 (E.D. Mich. Dec. 17, 2012); *Poe v. Comm'r*, 342 Fed. Appx. 149, 156 n. 3 (6th Cir.2009). Blay bears the

burden of showing that his obesity significantly limits his physical ability to do basic work activities. *See* Social Security Ruling (SSR) 02-1p, 2002 WL 34686281, at *4. Blay does not meet this burden, as the record does not show that he suffers from significant deficits in his physical functioning. Indeed, he was noted as having a normal gait, normal muscle strength and tone, and a full range of motion. [ECF No. 11-7, Tr. 279, 361; ECF No. 11-8, Tr. 452, 516, 576; ECF No. 11-9, Tr. 564, 568, 572, 576, 582, 589].

Regarding Blay's kidney disease and other conditions he alleges to be severe impairments, again, his diagnoses alone do not establish any limitations in performing basic work activities.

## B.

Blay next argues that the ALJ failed to consider all of his mental conditions in identifying his severe impairments at step two of the analysis, and did not accord proper weight to the opinion evidence concerning his mental impairments. The ALJ found Blay's cognitive disorder and depression to be non-severe mental impairments. [ECF No. 11-2, Tr. 20]. And although the ALJ noted that Blay had been diagnosed with both general anxiety and personality disorders, [*id.,* Tr. 22], Blay argues that the ALJ failed to meaningfully address them. Blay contends that all of these

disorders should have all been considered severe impairments. [ECF No. 14, PageID 717].

Blay's objection to the ALJ's finding that his cognitive disorder and depression were impairments, but not severe, is without merit because, once the ALJ found at least one severe impairment, he was required to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 SSR LEXIS 5 at *14, 1996 WL 374184 (1996). So long as the ALJ considers all of a claimant's impairments, both severe and non-severe, through the remaining steps of the analysis, any failure at step two to find additional impairments severe does "not constitute reversible error." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). And although the ALJ specified only cognitive disorder and depression as being medically determinable mental impairments that were nonetheless nonsevere, his decision addressed all of Blay's alleged mental impairments *in toto*, analyzing the four broad functional areas, summarizing his mental health treatment and improvements with that treatment, and concluding that Blay's "mental impairments do not have more than a minimal effect on his ability to engage in basic work activities, and are therefore nonsevere." [ECF No. 11-2, Tr. 20-22].

Further, Blay has not carried his burden of showing that mental impairments significantly limit his mental ability to do basic work activities. § 1522(b); § 922(b); *Preslar*, 14 F.3d at 1110. The examples of basic work activities under Section 1522(b) that pertain to mental capacity are "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." § 1522(b)(3)-(6); § 922(b)(3)-(6). Bray's argument that the ALJ's analysis was erroneously are twofold: first, he complains that the ALJ's determination that he showed improvements during the course of his mental health treatment is based upon a cherry-picking of the record; and second, he challenges the ALJ's treatment of medical opinions. Neither argument is sustainable.

The record supports the ALJ's finding that Blay's mental health improved with treatment. Blay began receiving psychiatric care at Development Centers, Inc., with Barbara M. Kilian, M.D., in November 2014. [ECF No. 11-8, 387-92]. He reported a severely depressed mood, crying spells, low energy, low motivation, irritability, and low self-esteem, but denied any suicidal or homicidal ideas. [*Id.*]. Dr. Kilian found that he had good grooming, hygiene, a full and anxious affect, an intact thought

process, good concentration, and good judgment, and was cooperative and depressed. [*Id.*]. She found Blay to have a Global Assessment of Functioning (GAF) score of 50,[3] and recommended that Blay undergo individual therapy and medical treatment. [*Id.*]. By January 2015, Blay reported that his mood and anxiety had improved, but he was still depressed, and Dr. Kilian increased his Lexapro and added Wellbutrin. [*Id.*, Tr. 436-37]. In March and May 2015, Blay reported a depressed mood, low energy and isolative behavior, and Dr. Kilian increased his Wellbutrin in March. [*Id.*, Tr. 426-29, 430-34]. She continued to score Blay's GAF at 50. [*Id.*]. By June 2015, Blay reported occasions of less intense depression and an improved energy level, and Dr. Kilian found him to be more stable, to have an improved mood and brighter affect, and a GAF that remained at 50. [*Id.*, Tr. 420-24]. In August 2015, Dr. Kilian again reported Blay to be stable with an improved mood, and to have a GAF of 50. [*Id.*, Tr. 412-19]. This is substantial evidence in support of the ALJ's decision that Blay's mental impairments improved with treatment.

---

[3] "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning." *Norris v. Comm'r of Soc. Sec.*, No. 11–5424, 461 Fed. Appx. 433, 436 n. 1 (6th Cir.2012) (citations omitted).

The ALJ also did not err in weighing the opinion evidence.  The ALJ

gave some weight to Dr. Kilian's scoring of Blay's GAF.  [ECF No. 11-2, Tr.

22].  He afforded some weight to the opinion of Terrance C. Mills, Ph.D.,

who conducted a consultative examination in May 2014.  Dr. Mills stated

that Blay's "ability to understand, retain, follow simple instruction, and

perform basic, routine, and tangible tasks is mildly impaired.  His ability to

interact with others outside the home, supervisors, and the public appears

to be adequate." [ECF No. 11-7, Tr. 380].  In giving Dr. Mills' opinion some

weight, the ALJ reasoned that "the record does not reflect a history of

cognitive issues," Blay's past work experience has been skilled or semi-

skilled, he is independent in activities of daily living, and "he was able to

work three days per week as a volunteer desk clerk for nine months during

his alleged period of disability."  [ECF No. 11-2, Tr. 21-22, citing ECF No.

11-2, 59-60].

The ALJ gave great weight to the opinion of state agency medical

consultant, Dyan Hampton-Aytch, Ph.D., who found, in May 2014, that Blay

did not suffer from a severe mental impairment.   [*Id.*, Tr. 22; ECF No. 11-3,

Tr. 82].  The ALJ concluded that "although [Blay] received psychiatric

treatment after the opinion was given, the records from [Blay's] medication

reviews indicated his symptoms improved significantly once he started

treating with psychotropic medications." [ECF No. 11-2, Tr. 22]. He also noted that as recently as 2015, Blay denied feeling depressed or anxious, and that he no longer attends counseling, suggesting that his symptoms are "well-controlled with medication alone," thereby demonstrating that his mental impairments are nonsevere. [*Id.*].

Blay complains that the ALJ failed to give controlling weight to Dr. Kilian's GAF finding. It is true that the "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. But the Sixth Circuit has emphasized that no "statutory, regulatory, or other authority require[s] the ALJ to put stock in a GAF score in the first place." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir.2006). Blay cites no authority establishing that ALJs are required to give controlling weight to a treating physician's opinion of a claimant's RFC.

Neither Dr. Hampton-Aytch nor Dr. Mills was Blay's treating physician, but the ALJ was required to properly weigh their opinions. 20 C.F.R. § 404.1527(c) and § 416.927(c). The ALJ was required to consider

"the examining relationship (if any); the length, nature and extent of the treatment relationship (if any); supportability of the opinion; consistency of the opinion with the record as a whole; the specialization of the source; and any other relevant factors which tend to support or contradict the opinion." *Brumbaugh v. Comm'r of Soc. Sec.*, 989 F. Supp. 2d 690, 695 n. 5 (S.D. Ohio 2013) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).  Blay suggests that the ALJ erred by giving more weight to the opinion of Dr. Hampton-Aytch than to Dr. Mills since Dr. Hampton-Aytch did not examine Blay and his opinion was not based upon review of the whole record.

Here, the ALJ explained that he gave significant weight to Dr. Hampton-Aytch's opinion because the record showed that Blay's mental health significantly improved with treatment.  The Court finds no error.  *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (finding that an ALJ may properly rely on the opinions of a reviewing state agency medical consultant).  And Dr. Mills found that Blay suffered from only mild impairments, deeming any error by the ALJ in weighing those opinions harmless.

Lastly, Blay requests the Court to consider a March 2016 RFC statement from Dr. Kilian that he submitted after the ALJ's decision.  [ECF

15

No. 14, PageID 721; ECF No. 11-9, Tr. 652-54]. It is well settled that "If the Appeals Council declines to review an ALJ's decision, federal courts cannot consider evidence not presented to the ALJ." *Elliott v. Apfel*, 28 F. App'x 420, 423 (6th Cir. 2002); *Purdy v. Comm'r of Soc. Sec.*, No. 15-10949, 2016 WL 4771393, at *1 (E.D. Mich. Aug. 19, 2016) ("[S]ince district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ."). A court may only consider new evidence in determining whether remand is appropriate under Sentence six of the Act. *Street v. Comm'r of Soc. Sec.*, 390 F. Supp. 2d 630, 640 (E.D. Mich. 2005)

Sentence six of the Act permits remand only where a subsequent adjudicator is presented with "*new* evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence in to the record in a prior proceeding." § 405(g) (emphasis added). With respect to the "good cause" requirement, the Sixth Circuit "has taken a harder line" and requires a claimant to "give a valid reason for his failure to obtain evidence prior to the hearing." *Oliver*, 804 F.2d at 966. Blay has failed to demonstrate that he meets this standard. *See Edwards v. Comm'r of Soc. Sec.*, 654 F. Supp. 2d 692, 701 (W.D. Mich. 2009) (a claimant cannot "wait

to see if the ALJ rules in her favor; and then, if he does not, [] belatedly obtain additional favorable medical opinion.").  Thus, remand for consideration of Blay's proffered new evidence is not warranted.

## C.

Blay argues that the ALJ failed to properly evaluate his credibility, and failed to provide a narrative explanation for the assessed RFC.  The Court disagrees.

Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  At the same time, "such determinations must find support in the record."  *Rogers*, 486 F.3d at 241. An ALJ must explain the bases of his credibility determination, and the reviewing court should not be left to speculate as to the grounds for the ALJ's decision.  *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 261 (6th Cir. 2015). "[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248.

Blay takes issue with the wording of the ALJ's finding his "statements concerning the intensity, persistence and limiting effects of these symptoms

[were] not entirely credible." [ECF No. 11-2, Tr. 24; ECF No. 14, PageID 726]. He argues that the statement demonstrates that the ALJ failed to conduct a meaningful review. This argument is without merit as the ALJ's decision evidences meaningful review of the record.

The ALJ addressed Blay's complaints of diarrhea but concluded that "the alleged severity of [Blay's] diarrhea is not supported by the treatment records. The record does not provide mentions of any incontinence or accidents, and [Blay's] complaints of diarrhea were inconsistent." [ECF No. 11-2, Tr. 25-26]. This conclusion is supported by the record. In May 2014, Blay reported that he was suffering from chronic diarrhea, [ECF No. 11-7, Tr. 378], and in November 2014, he reported six to eight bowel movements per day. [ECF No. 11-9, Tr. 588-89; ECF No. 11-2, Tr. 25]. However, the record also demonstrate various occasions when Blay denied diarrhea. [ECF No. 11-7, Tr. 321, 325; ECF No. 11-9, Tr. 591-92, 585]. In June 2015, Blay claimed to have loose stools on and off that were controlled with occasional Imodium. [ECF No. 11-8, Tr. 515]. Thus, the ALJ did not err in discounting the severity of Blay's diarrhea.

In regard to Blay's diabetes, the ALJ concluded that his "diabetes appears to be uncontrolled, although it was better controlled when he was able to use an insulin pump. However, related symptoms were only

18

reported intermittently, and some noncompliance treatment was noted."

[ECF No. 11-2, Tr. 26]. Despite the fact that Blay's diabetes was sometimes reported to be uncontrolled, the record supports that his physical functioning was not greatly impaired. Blay had a normal gait, normal muscle strength and tone, no gross or motor sensory deficits noted, and intact nerves and sensation. [ECF No. 11-7, Tr. 279, 361; ECF No. 11-8, Tr. 576; ECF No. 11-9, Tr. 564, 568, 572, 576, 582, 586].

In further consideration of Blay's credibility, the ALJ noted that Blay left his last job because of a layoff, and not for health reasons. [ECF No. 11-2, Tr. 26, 47]. The ALJ also noted that Blay testified that he is independent in activities of daily living, including cooking, cleaning and driving, [ECF No. 11-2, Tr. 21, 26, 58-59], and that there is no treating source opinion stating that he is unable to work or requires work limitations. [*Id.*, Tr. 26]. The ALJ provided specific reasons for his credibility determination—reasons that find support in the record.

Blay argues that the ALJ did not assess the impact of her obesity on her RFC, as required by Social Security Ruling 02-01p.[4] That ruling "does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, 'may' increase the severity of the other

_____

[4] This ruling is available at 2000 WL 628049, at *1 (S.S.A.).

limitations." *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006). However, the record does not establish and Blay does not allege any connection between his impairments and his obesity. *See Shilo v. Comm'r of Soc. Sec.,* 600 F. App'x 956, 959 (6th Cir. 2015). Blay does not cite any specific evidence establishing that he requires a more restrictive RFC. That is his burden. *Preslar*, 14 F.3d at 1110.

The Court thus finds no compelling reason to disturb the ALJ's credibility determination or to recommend overturning his RFC assessment.

## III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 16] be **GRANTED**; that Blay's motion [ECF No. 14] be **DENIED**; and that the Commissioner's decisions be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: July 31, 2017

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 31, 2017.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager